No. 26-5178

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

TENNESSEE RIVERKEEPER,

*Plaintiff – Appellant*,

-v.-

CRYSTAL RAY,

*Defendant*,

RICKY RAY,
d/b/a RR Farms, aka RR Farms Mass Grading,

*Defendant – Appellee.*

---

Appeal from the United States District Court
for the Middle District of Tennessee

---

# BRIEF OF APPELLEE, RICKY RAY d/b/a RR Farms

---

Gregory L. Cashion
William L. Fitts
SMITH CASHION & ORR, PLC
One American Center
3100 West End Ave., Ste 800
Nashville, Tennessee 37203
(615) 742-8555
Counsel for Appellee, Ricky Ray d/b/a RR Farms

# I. TABLE OF CONTENTS

I. TABLE OF CONTENTS ........ ii

II. TABLE OF AUTHORITIES ........ iii

III. STATEMENT OF ISSUES ........ 1

IV. STATEMENT OF THE CASE ........ 2

V. SUMMARY OF THE ARGUMENT ........ 9

VI. ARGUMENT ........ 10

VII. CONCLUSION ........ 33

VIII. CERTIFICATE OF COMPLIANCE ........ 34

IX. ADDENDUM ........ 35

## II. TABLE OF AUTHORITIES

### Statutes

33 U.S.C. § 1311 ---------------------------------------------------------------- 13, 14

33 U.S.C. § 1362 ---------------------------------------------------------------- 13, 17

33 U.S.C. § 1365 ------------------------------------------------------------ 14, 16, 24

33 U.S.C. § 1342 -------------------------------------------------------------------- 16

42 U.S.C. § 6941-42 --------------------------------------------------------------- 24

42 U.S.C. § 6972 -------------------------------------------------------------------- 25

42 U.S.C. § 6943 -------------------------------------------------------------------- 25

42 U.S.C. § 6944 ---------------------------------------------------------------- 25, 27

42 U.S.C. § 6903 -------------------------------------------------------------------- 27

### Regulations

Rules of the Tennessee Department of Environment and Conservation, Solid Waste Management Division, Chapter 0400-11-01 – Solid Waste Processing and Disposal ------------------------------------------------------ 25, 27

### Rules

Fed. R. Civ. P. 50 ------------------------------------------------------------------ 9

Fed. R. Civ. P. 51 ---------------------------------------------------------------- 22

**FEDERAL CASES**

*United States v. Cundiff*, 555 F.3d 200 (6th Cir. 2009)) -------- 5, 13, 17-19

*Culver v. CCL Label, Inc.*, 455 F. App'x 625 (6th Cir. 2012) --------------- 9

*Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531 (6th Cir. 2008) ----- 10

*Ordos City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co., LLC*, 695 F. App'x 875 (6th Cir. 2017) ---------------------------------------------------- 10

*Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 442–43 (6th Cir. 2000) -- 10

*Epazz, Inc. v. Nat'l Quality Assurance USA, Inc.*, 2021 WL 3808946 at *8 (6th Cir. Aug. 26, 2021) ---------------------------------------------------------- 10

*Slinger v. Pendaform Co.*, 2022 WL 2133745, at *3 (6th Cir. June 14, 2022) ------------------------------------------------------------------------------10

*Gorlikowski v. Tolbert*, 52 F.3d 1439 (7th Cir. 1995) ----------------------- 10

*City of Memphis v. Horn Lake Creek Basin Interceptor Sewer Dist.*, 693 F. Supp. 3d 839, 867 (W.D. Tenn. 2023) ---------------------------------- 10-11

*Tennessee Riverkeeper, Inc. v. City of Lawrenceburg*, 2023 WL 4611816, at *8 (M.D. Tenn. 2023) ------------------------------------------------------ 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, (2000) ---------------------------------------------------------------------- 14

*Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 836 (9th Cir. 2021) ---------------------------------------------------------------------- 14, 16

*Pymatuning Water Shed Citizens for Hygienic Env't v. Eaton*, 506 F. Supp. 902 (W.D. Pa. 1980) ---------------------------------------------------------- 15

*Waterkeeper Alliance, Inc. v. U.S. E.P.A.*, 399 F.3d 486 (2d Cir. 2005) - 16

*Riverkeeper v. Tweden*, No. 3:24-cv-00886, 2025 U.S. Dist. LEXIS 40463 (M.D. Tenn. Mar. 6, 2025) ------------------------------------------------------ 17, 18

*Contour Indus. v. U.S. Bank, N.A.*, 437 Fed. Appx. 408 (2011) ----------- 22

## III. STATEMENT OF ISSUES

1. Whether the trial court erred in dispensing Appellant's claim for violations of the Clean Water Act in granting Mr. Ray's Rule 50(a) motion by holding as a matter of law that proof of discharge of a pollutant was a requisite element of claims under the Act.

2. Whether the trial court erred in dispensing Appellant's claim for violations of the Clean Water Act in granting Mr. Ray's Rule 50(a) motion by finding that Appellant had not provided legally sufficient evidence of proof of discharge of a pollutant.

3. Whether the trial court erred in instructing the jury that Tennessee law provided for an exemption to the landfill permitting requirement for facilities subject to the Resource Conservation and Recovery Act.

## IV. STATEMENT OF THE CASE

Tennessee Riverkeeper, Inc. ("Appellant" or "Riverkeeper") brought this citizen suit against Mr. Ricky Ray ("Appellee" or "Mr. Ray") under the Clean Water Act (the "CWA"), 33 U.S.C. §§ 1251–1387, and the Resource Conservation and Recovery Act (the "RCRA"), 42 U.S.C. §§ 6901–6992. Amended Complaint, R. 48, Page ID # 274–301. Crystal Ray, who had been originally named as an additional defendant, was dismissed from the case prior to trial by agreement of the parties. Order denying Motion for Summary Judgment, R. 94, Page ID # 1341.

Mr. Ray has worked in construction and site grading for approximately fifty years, including eighteen years as a superintendent at Summit Constructors. Trial Transcript (Day Three), R. 133, Page ID # 1995. Grading and site work, as Ray explained, involves "taking a raw piece of land and building pads for buildings, roads, parking lots," and similar improvements, work that necessarily entails both excavating and placing material. *Id.* at # 1995.

Mr. Ray operates a business known as RR Farms, located at 5250 Ashland City Highway in Davidson County, Tennessee. Trial Transcript (Day Three), R. 133, Page ID # 2092; Amended Complaint, R. 48, Page

ID # 274. RR Farms purpose was to accept fill material on the property and regrade the site so that it could be used as a grazing farm for cattle and horses; as he explained, the property "will have green grass all over it," on which one "can run cattle or horses." Trial Transcript (Day Three), R. 133, Page ID # 1998. The property at issue in this matter comprises approximately thirty-eight acres, of which roughly seventeen are disturbed and drain to two stormwater outfalls. Trial Transcript (Day One), R. 131, Page ID # 1814–1815. For the work at the site, Ray obtained and operated under a Tennessee general NPDES permit for stormwater discharges associated with construction activities, Permit No. TNR100000. Amended Complaint, R. 48, Page ID # 283; Pretrial Order, R. 92, Page ID # 1324. Ray built a stormwater retention pond at the site, beginning construction in 2020 and completing it, with baffles, in 2023. Trial Transcript (Day One), R. 131, Page ID # 1818.

Before trial, the parties submitted a pretrial order (the "Pretrial Order"), which provided that "[t]he pleadings are amended to conform to the Pretrial Order and the Pretrial Order supplants the pleadings." Pretrial Order, R. 92, Page ID # 1323. In the Pretrial Order, Riverkeeper asserted three counts against Mr. Ray: (1) that Mr. Ray violated the CWA

"by operating the Site in a manner that discharges pollutants to the waters of the United States and waters of the state in violation of his permit"; (2) that Mr. Ray "violated the RCRA by operating a Construction and Demolition Landfill without first obtaining a solid waste disposal permit"; and (3), that Mr. Ray "violated the RCRA by operating an open dump". *Id.* at # 1324.

At the pretrial conference for this matter, Riverkeeper voluntarily dismissed Count Three, the open-dump claim, and the case proceeded to trial on Counts One and Two alone. Order on Pre-trial Conference, R. 96, Page ID # 1365. The district court also ruled before trial that Riverkeeper's witness Barry Sulkin could not offer expert opinion testimony under Federal Rule of Evidence 702. *Id.* at # 1365.

The case proceeded to a jury trial beginning May 27, 2025. Trial Transcript (Day One), R. 131, Page ID # 1677. In its case-in-chief, Riverkeeper called five fact witnesses and introduced photographs and videos of what it characterized as "muddy water". Order on Rule 50 Motion, R. 125, Page ID # 1575. The witnesses described the water as "muddy," but none testified as to what, if anything, made the water muddy. Order on Rule 50 Motion, R. 125, Page ID # 1575. One neighbor,

asked about the water on his property, acknowledged that he did not "really know what's in the water." Trial Transcript (Day One), R. 131, Page ID # 1776.

When Riverkeeper rested its case-in-chief, Mr. Ray moved for judgment as a matter of law under Rule 50(a) on Count One, arguing that Riverkeeper had failed to prove an essential element of a Clean Water Act claim, the discharge of a pollutant. Trial Transcript (Day Two), R. 132, Page ID # 1958–1964. As the district court recognized, a citizen-suit plaintiff must prove "(1) a person (2) discharged a pollutant (3) from a point source (4) into waters of the United States (5) without a permit." Order on Rule 50 Motion, R. 125, Page ID # 1576 (quoting *United States v. Cundiff*, 555 F.3d 200, 213 (6th Cir. 2009)). The Clean Water Act, as the Sixth Circuit has explained, "is not concerned with mere 'material' but instead with the addition of 'pollutants'", material that may be benign in one place yet disruptive in another. *Id.* The court granted the motion and dismissed Count One, concluding that Riverkeeper "failed to offer any evidence proving a discharge of pollutants within the scope of the Clean Water Act." Order on Rule 50 Motion, R. 125, Page ID # 1579. As the court explained from the bench, Riverkeeper's witnesses described

the water as muddy, "but nothing was offered to explain why the water is muddy," and no witness identified any particular pollutant. Trial Transcript (Day Three), R. 133, Page ID # 1989.

Count Two, however, proceeded to the jury. The district court instructed the jury that, to find Ray liable under the RCRA, Riverkeeper first had to prove that RR Farms is a Class IV Construction and Demolition Landfill (as defined by the RCRA), and that, if it were, the jury then had to determine whether Ray had proved that the Site was exempt from the landfill-permit requirement. Trial Transcript (Day Three), R. 133, Page ID # 2094–2095. Under the governing Tennessee regulation, the court instructed, "the use of solely natural rock, dirt, stumps, pavement, concrete, and rebar, and/or brick rubble as fill material does not subject a Class IV construction and demolition landfill to the requirement to have a permit." Trial Transcript (Day Three), R. 133, Page ID # 2095; *see* Tenn. Comp. R. & Regs. 0400-11-01-.02(1)(b)(3)(xiii).

The jury answered both questions ultimately in Mr. Ray's favor: it found that the RR Farms property was a Class IV Construction and Demolition Landfill and that Mr. Ray had proven the construction

thereon used solely natural rock, dirt, stumps, pavement, concrete, and rebar, and/or brick rubble as fill material. Trial Transcript (Day Three), R. 133, Page ID # 2106. The jury was polled, and each juror confirmed the verdict. *Id.* at # 2106–2107. Therefore, the district court entered judgment for Mr. Ray. Judgment, R. 124, Page ID # 1573.

After the conclusion of trial, Riverkeeper moved to alter or amend the judgment under Rule 59(e) or, in the alternative, for a new trial under Rule 59(a). Plaintiff's Rule 59 Motion, R. 126, Page ID # 1582–1584. As to Count One, Riverkeeper argued that the district court erred in requiring proof of a pollutant discharge under the Clean Water Act and, alternatively, that the trial evidence would have permitted a reasonable jury to find such a discharge. Memorandum Opinion, R. 137, Page ID # 2121. As to Count Two, Riverkeeper argued that the Tennessee permitting exemption did not apply and that the court erred in submitting the exemption question to the jury. *Id.*

The district court denied the motion in its entirety. *Id.* at # 2117–2130; Order, R. 138, Page ID # 2131. The court held that Riverkeeper's Count One arguments were improper under Rule 59(e) and also failed on the merits, reaffirming that a Clean Water Act citizen suit requires

threshold proof of a pollutant discharge. Memorandum Opinion, R. 137, Page ID # 2122–2126. As to Count Two, the court explained that it, not the jury, had decided the legal question of whether the Tennessee exemption applied; the jury had decided only the factual questions of whether the Site is a Class IV Construction and Demolition Landfill and whether it is used solely for fill material. *Id.* at # 2130. The court further held that Riverkeeper had forfeited any open-dump theory of liability by voluntarily dismissing Count Three, the only count that had alleged an open dump. *Id.* at # 2128.

Riverkeeper timely appealed, challenging the final judgment entered May 30, 2025, and the order entered January 28, 2026, denying its post-trial motion. Notice of Appeal, R. 139, Page ID # 2132–2133. The rulings presented for review are the district court's grant of judgment as a matter of law dismissing Count One, the judgment entered for Ray on Count Two following the jury's verdict, and the denial of Riverkeeper's motion under Rule 59.

## V. SUMMARY OF THE ARGUMENT

First, Appellant argues that the trial court erred in dispensing of its sole claim under the CWA in granting Mr. Ray's Rule 50(a) motion. Appellant reasons that proof of discharge of a pollutant is not a requisite element of a claim under the Clean Water Act and it can proceed under such a claim under purely procedural violations of the operative permit. However, Appellant forfeited the presented theory of liability without proof of a pollutant, as it clearly presented its claim in the Pre-Trial Order as for violation of the CWA due to the discharge of pollutants. Furthermore, all applicable binding and persuasive authority on this matter shows that proof of a pollutant is required to find liability, regardless of whether the alleged violations are discharge related or procedural under the operative permit.

Second, Appellant argues that the trial court erred in granting the Rule 50(a) motion in that the evidence presented at trial was legally sufficient to find that it did, in fact, provide proof of discharge of a pollutant by Mr. Ray. However, Appellant merely presented testimony of "muddy water" and did not provide any testimony or other evidence identifying the material causing the water to appear "muddy" or evidence

concluding that such material was actually a pollutant under the CWA. The jury may not engage in rank speculation as to what caused the water's appearance and therefore, Appellant failed to prove the requisite element under the CWA of discharge of a pollutant.

Third, Appellant argues that the trial court erred in instructing the jury that Mr. Ray could defend against Appellant's RCRA claim if he met the Tennessee regulatory exemption for landfill permits. However, Riverkeeper abandoned the presented theory of RCRA liability for "open dumping" rendering this analysis moot. Even so, Appellant's argument fails on the merits as the proper legal analysis forming the basis of the jury instruction at issue was in fact, proper.

# VI. ARGUMENT

## A. Proof of Discharge of a Pollutant Is an Indispensable Element of All Citizens Suit Actions Under the Clean Water Act.

### 1. Standard of Review

A Rule 50(a) motion, the ruling of which has been appealed by Riverkeeper here, is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party

on that issue." Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law should be granted when, viewing the evidence and proof in the light most reasonable to the nonmoving party, "reasonable minds could come to but one conclusion in favor of the moving party." *Culver v. CCL Label, Inc.*, 455 F. App'x 625, 627 (6th Cir. 2012) (citations omitted). This Court reviews a Rule 50 ruling *de novo*, applying the same standard as the district court. *Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531, 543 (6th Cir. 2008).

**2. <u>Prior to trial, Riverkeeper forfeited the potential theory that liability under the Clean Water Act could be found upon permit violations alone.</u>**

Under the Federal Rules of Civil Procedure, a final pretrial "order controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). The Sixth Circuit has consistently held that "parties generally forfeit claims or defenses not raised in the final pretrial order." *Ordos City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co., LLC*, 695 F. App'x 864, 875 (6th Cir. 2017); *see also Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 442–43 (6th Cir. 2000) ("This Circuit has held that a party's failure to advance a theory of recovery in a pretrial statement constitutes waiver of that theory."); *Epazz, Inc. v. Nat'l Quality Assurance USA, Inc.*, 2021

WL 3808946 at *8 (6th Cir. Aug. 26, 2021); *Slinger v. Pendaform Co.*, 2022 WL 2133745, at *3 (6th Cir. June 14, 2022).

The Sixth Circuit has adopted the reasoning for this doctrine as set forth by the Seventh Circuit: "Because the parties rely on the pretrial conference to inform them precisely what is in controversy, the pretrial order is treated as superseding the pleadings and establishes the issues to be considered at trial." *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1443–44 (7th Cir. 1995) (citations, internal quotation marks, and alterations omitted); *City of Memphis v. Horn Lake Creek Basin Interceptor Sewer Dist.*, 693 F. Supp. 3d 839, 867 (W.D. Tenn. 2023) (holding that "the Seventh Circuit's reasoning in Gorlikowski is consistent with Sixth Circuit caselaw"). This superseding order is necessary, as "the purpose of Rule 16 is to clarify the real nature of the dispute at issue, a claim or theory not raised in the pretrial order should not be considered by the fact-finder." *Id.*

Nonetheless, Appellant now attempts to circumvent its own language of Claim One as presented in the Pretrial Order, other pretrial filings, and orally at trial. In the Pretrial Order, Riverkeeper stated that its trial theory for Count One was that Ray "violated the CWA by

operating the Site ***in a manner that discharges pollutants*** to the waters of the United States and waters of the state in violation of [his NPDES] Permit." Pretrial Order, R. 92, Page ID # 1324 (emphasis added). Not only was this theory clearly set forth in the Pretrial Order, but Riverkeeper repeated it consistently across various pretrial filings.

In its own proposed jury instructions, Riverkeeper stated, "Plaintiffs contend that the defendants violated this permit by discharging pollutants into tributaries of Sulphur Creek[.]" Requested Jury Charges, R. 86, Page ID # 1278–80. Furthermore, Riverkeeper admitted outright, "To establish a CWA violation, the plaintiffs must prove . . . a discharge . . . of a pollutant[.]" *Id.* at # 1279. In its Trial Brief, Riverkeeper reiterated its contention that "Mr. Ray is violating the Clean Water Act by discharging contaminated stormwater in violation of his General Construction Stormwater Permit". Riverkeeper's Trial Brief, R. 100, Page ID # 1436.

Even more damning for Riverkeeper, its counsel plainly admitted at trial during the oral argument of Plaintiff's Rule 50 Motion that discharge of a pollutant was a requisite element of Claim One. When asked if Riverkeeper's position was that proof of a pollutant was not

required to succeed on its claim, Riverkeeper's counsel stated unambiguously, "Yeah, we have to prove there's a pollutant." Trial Transcript (Day Two), R. 132, Page ID # 1967.

Despite this clear and consistent description of its own claim, Riverkeeper now performs a puzzling about-face and contends that the Court clearly erred by requiring Riverkeeper to prove discharge of pollutants in order to be successful under its CWA claim. As stated by the Trial Court, the "Court and parties expended resources preparing for trial based on the theories presented in the Pretrial Order." Order on Rule 50 Motion, R. 125, Page ID # 1580. Mr. Ray's defense at trial was therefore based upon on Riverkeeper's stated legal theory that the CWA had been violated by the discharge of pollutants in violation of his NPDES permit. By asserting this theory in the Pretrial Order as the sole basis for its Clean Water Act claim, along with the multiple other filings and even statements of Riverkeeper's counsel at trial, Riverkeeper forfeited this new legal argument that liability on Count One could be established without proof of discharge of a pollutant.

Additionally, Riverkeeper's argument that it can revive this theory merely because it presented various proposed issues for the jury that

relate to such claim is purely without merit and is without any authoritative support.

### 3. <u>All binding and persuasive authority agrees that proof of discharge of a pollutant is required to sustain a citizens suit action under the Clean Water Act.</u>

Even if Riverkeeper had not clearly forfeited this theory of liability without proof of discharge of a pollutant, this argument nonetheless fails on its merits. As stated *supra*, it is well established in the Sixth Circuit a claim under the Clean Water Act may only be successful upon proof by a preponderance of the evidence that: "(1) a person (2) *discharged a pollutant* (3) from a point source (4) into waters of the United States (5) without a permit." *United States v. Cundiff*, 555 F.3d 200, 213 (6th Cir. 2009) (citing 33 U.S.C. §§ 1311(a), 1362(6), 1362(7), 1344(a), 1362(12) (emphasis added)). Riverkeeper is well aware of this requirement, as the Middle District of Tennessee has explained it to them previously. *See Tennessee Riverkeeper, Inc. v. City of Lawrenceburg*, 2023 WL 4611816, at *8 (M.D. Tenn. 2023).

"The Clean Water Act defines the 'discharge of a pollutant' as 'any addition of any pollutant to navigable waters from any point source.'" *Cundiff*, 555 F.3d at 213 (quoting 33 U.S.C. § 1362(12)(A)). As the Sixth

Circuit has explained, the Clean Water Act "is not concerned with mere 'material' but instead with the addition of 'pollutants'–material can be benign in one spot and seriously disruptive to the surrounding ecological system in another." Id.

The basis of Riverkeeper's argument is that the CWA allows for suits "to enforce violations" of NPDES permits. While this statement is mostly true, Plaintiff's argument ignores the difference between CWA claims under Section 1365(f)(1) and Section 1365(f)(7) and the requisite element of pollutant discharge applicable to all CWA actions. 33 U.S.C. § 1365. Courts have recognized these two general categories of claims under the Clean Water Act.

First, there are claims for "***discharge violations***" under Section 1365(f)(1), allowing citizens to bring a claim for the unlawful discharge of a pollutant into a Water of the United States, which requires proof of said pollutant and allows for the award of civil penalties. 33 U.S.C. § 1365; 33 U.S.C. § 1311(a); 33 U.S.C. § 1319; *see, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 175–78 (2000); *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 836 (9th Cir. 2021).

Second, there are claims for "***procedural violations***" or non-discharge violations, which allows suit to enforce violations of a permit. *Corona Clay*, 17 F.4th at 831; *Laidlaw*, 528 U.S. at 174. The avenue for enforcing permitting violations is injunctive relief, as courts can enforce permit violations through injunctions requiring alteration of conditions or actions to reach compliance under the permit's requirements. *See Pymatuning Water Shed Citizens for Hygienic Env't v. Eaton*, 506 F. Supp. 902, (W.D. Pa. 1980) (court awarded only injunctive relief, requiring compliance with the conditions of the permit). Riverkeeper apparently takes the position that because it asserted a non-discharge violation in the Pre-Trial Order, it does not need to prove that Ray ever discharged pollutants into waters of the United States.

Nonetheless, Courts require proof of discharge of a pollutant in both situations, whether the plaintiff asserts discharge or procedural violations. Riverkeeper has failed to present any case whereby a permit violation alone was sufficient to recover under the CWA. Instead, Riverkeeper conflates and confuses these two types of violations with the common defense to CWA claims for lack of standing, which can be established by showing that any alleged violations were "wholly past".

The reason that Riverkeeper has consistently failed to provide any case where a permit violation without proof of discharge of a pollutant sustained a CWA claim is likely because no such case exists. The 2nd Circuit sets forth this logic clearly, as "in the absence of an actual addition of any pollutant to navigable waters from any point, there is no point source discharge, no statutory violation, no statutory obligation of point sources to comply with EPA regulations for point source discharges, and no statutory obligation of point sources to seek or obtain an NPDES permit in the first instance." *Waterkeeper Alliance, Inc. v. U.S. E.P.A.*, 399 F.3d 866, 505–06 (2d Cir. 2005).

Instead of locating a single opinion that would support its contention, Riverkeeper warps a 9th Circuit holding into its talisman case, purportedly allowing a CWA claim upon procedural permit violations without proof of pollutant discharge. Inexplicably Riverkeeper ignores the clear language of *Corona Clay* that completely destroys its argument, which found that the CWA "vests district courts with jurisdiction over a citizen suit ***only upon proof of discharge into the navigable waters of the United States***." *Corona Clay,* 17 F.4th at 836 (citing 33 U.S.C. §§ 1365(a)(1), 1342(a)) (emphasis added). Stated

differently, a plaintiff may proceed with a citizen suit alleging procedural violations of an NPDES permit if, and only if, "the required jurisdictional discharge into United States waters has occurred." *Id.*

## B. Riverkeeper Failed to Present Evidence of a Discharge of a Pollutant at Trial.

### 1. Standard of Review

For this issue, Appellee adopts the Standard of Review under Section A.1. of its Brief *supra*.

### 2. Riverkeeper presented photographs, video, and testimony regarding "muddy water" at trial, yet failed to bring evidence of any discernable "pollutant".

The second alleged error of law according to Riverkeeper is that the proof submitted of visual accounts of discolored stormwater is enough to establish a "pollutant" under the CWA. The standard in the Sixth Circuit under this issue is clear, as "[t]he Clean Water Act defines the 'discharge of a pollutant' as 'any addition of any pollutant to navigable waters from any point source.'" *Cundiff*, 555 F.3d at 213 (quoting 33 U.S.C. § 1362(12)(A)). Further, the Clean Water Act "is not concerned with mere 'material' but instead with the addition of 'pollutants'– material can be benign in one spot and seriously disruptive to the surrounding ecological system in another." *Id.*

Interestingly, this is not the first time that Riverkeeper has had one of its CWA actions dismissed due to its failure to provide proof of a discernable pollutant despite accounts of discolored water. In another matter involving Appellant, the Middle District of Tennessee held that pollutants cannot be established using the "naked eye" alone. See *Riverkeeper v. Tweden*, No. 3:24-cv-00886, 2025 U.S. Dist. LEXIS 40463, at *22 (M.D. Tenn. Mar. 6, 2025). *Tweden* established that even an expert witness cannot prove the "pollutant" element of a Clean Water Act claim without physically testing the discharge at issue. *Id.* "Absent a claim that Riverkeeper's scientist is able to perceive, with the naked eye, the presence of the pollutants at issue, ***the court cannot credit the statement that Riverkeeper's scientist observed 'pollutant' discharge as anything other than speculative*** . . . " *Id.* at *22 (emphasis added).

In *Tweden*, Riverkeeper's scientist's observation of a "discharge of discolored water" did not support a statement that the defendants discharged pollutants. *Id.* at *20-22. The Court found that it "cannot credit ***this bald assertion without any facts*** supporting it." *Id.* at *21 (emphasis added). The Court ultimately holds, "other than conclusory

statements, Riverkeeper has not alleged facts to support a plausible ongoing CWA violation." *Id.* at *22.

Here, Riverkeeper provided no testing of the alleged infringing discharge whatsoever, neither at trial nor in prior allegations. The only proof presented in Plaintiff's case in chief was evidence of the observation of "muddy water". The photographic, video and testimonial evidence argued by Riverkeeper in the Motion does not prove "sediment-laden stormwater" as alleged; the only term used throughout the duration of the trial to describe the water at issue was "muddy water." If the observations of Riverkeeper's scientist of "discolored water" were not enough to establish a discharge of pollutants in *Tweden*, surely the observations of neighbors and other witnesses of "muddy water" also do not meet the requisite standard.

Riverkeeper cites *Cundiff* within its assertion that pollutants were in fact proven in its case-in-chief, as it notes that the *Cundiff* court found that rock, sand, and dirt can be "pollutants". However, it then pretends that a "reasonable inference" from the water that appeared "muddy" is that such water must have included a material that would be considered a pollutant. This analysis completely ignores the clear language of

*Cundiff* requiring evidence as to *which* material caused water to appear discolored, as some types of material can be benign in one circumstance, but a dangerous pollutant in others. 555 F.3d at 213.

### 3. **The jury may not infer from merely testimony regarding "muddy water" that Mr. Ray discharged pollutants in violation of the Clean Water Act.**

Appellant boldly asserts in its Brief that "the jury was entitled to infer from the visual evidence . . . that the discharges contained the very materials the jury found Ray was using as fill." The trial court correctly found that this inference was too farfetched, as no witness testified at trial that he saw any "sediment" in the muddy water, "nor did any witness testify that sediment in the muddy water is apparent just from looking at the pictures and videos offered into evidence." Order on Rule 50 Motion, R. 125, Page ID # 1577–78.

As stated by the trial court, the observed muddy water obviously must have been muddy with *something*. Memorandum Opinion, R. 137, Page ID # 2127. Nonetheless, Riverkeeper brings no authority holding that all muddy water necessarily must contain a pollutant under the Clean Water Act. The trial court correctly notes that such a finding would not make any sense anyway, as under *Cundiff*, Riverkeeper had

the burden to show that an actual *pollutant*, rather than some other material, was the "*something*" that made the water muddy. *Id.* Instead of meeting this burden, Riverkeeper tries to recover its failure by "invit[ing] the jury to engage in rank speculation about *why* the 'muddy' water is muddy, and then hold Ray liable for discharging unknown pollutants into navigable waters of the United States." Order on Rule 50 Motion, R. 125, Page ID # 1577. This lack of evidence supported granting Ray's Rule 50(a) motion during trial, and it likewise supports denying Riverkeeper's appeal here.

### 4. **<u>Even if Riverkeeper proved "Objectionable Appearance", this does not satisfy the proof of discharge of a pollutant element.</u>**

Yet again, with its argument regarding the alleged "objectionable appearance" of water discharged from the RR Farms property, Riverkeeper attempts to conflate violations of the NPDES permit with actionable violations of the Clean Water Act. It is true that the NPDES permit did not allow the discharge of water to "contain total suspended solids, turbidity, or color in such amounts or character that will result in any objectionable appearance compared to the turbidity or color of the receiving water, considering the nature and location of the water."

NPDES Permit, R. 58-9, Page ID # 544-45. However, Riverkeeper brings no authority that would suggest it can side-step the proof of pollutant element of a CWA action by showing discolored water that may or may not have been in violation of the terms of the NPDES permit. Proof of the actual pollutant, as discussed in depth *supra*, must be shown regardless of whether the alleged underlying violation of a permit is discharge related or procedural.

Nonetheless, Riverkeeper asks this Court to find that it had proven this alleged permit violation when it clearly fell far short of its burden. Appellant relies upon the testimony of one lay witness who testified that he found the color of water shown in photographs to be "objectionable." However, "objectionable" is a technical term that was never defined in the NPDES Permit, nor under Tennessee law. Riverkeeper did not have any expert witness testimony to establish what extent and what color would render stormwater "objectionable" under applicable standards. Under this flawed logic, any lay person could object to water as e.g., too clear, too blue, too dark, or too bright, and this would render a permittee in violation.

Furthermore, "objectionable" is qualified by the language "considering the nature and location of the water." *Id.* Riverkeeper failed to bring any testimony as to what colors would be objectionable considering the nature of Sulphur Creek and to what extent their presence would create such an objection. An expert witness would have been necessary to provide the jury with such an explanation, but no such testimony was offered.

### C. Although Riverkeeper's Argument on This Issue is Moot, the Court Properly Instructed the Jury on Riverkeeper's Resource Conservation and Recovery Act Claim.

#### 1. <u>Standard of Review</u>

In the Sixth Circuit, the standard of review for jury instructions in civil cases depends on whether a proper objection was made at trial. If an objection was made, the appellate court reviews the instructions *de novo* to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision. *See Contour Indus. v. U.S. Bank, N.A.*, 437 Fed. Appx. 408 (2011). However, if no objection was made at trial, the court applies the plain error standard of review. Fed. R. Civ P. 51.

Here, when the instruction at issue was presented to the parties in open court and an opportunity was given for objection to be preserved on the record, Riverkeeper did not object. Even further, counsel for Riverkeeper agreed with the court's assessment of the logic behind Count Two and its corresponding jury instruction. When the trial court brought forth its proposed final instruction regarding Count Two, including the two part analysis of whether the property fit the definition of a Class IV construction and demolition landfill and if so, whether the Tennessee exemption applied, counsel for Riverkeeper responded, "Yes, Your Honor, we agree." Trial Transcript (Day 2), R. 132, Page ID # 1936. The trial court reiterated this instruction and asked if counsel for Riverkeeper agreed, to which they responded, "That's right." *Id.* at # 1937. Even a third time, when the court had fully fleshed out the eventual jury instruction after further conversation between counsel for the parties, it asked Riverkeeper if it had any objection to the jury instruction. *Id.* at # 1938. A third time, Riverkeeper declined to object, "I don't think we have an objection to that your honor." *Id.* at # 1940.

Therefore, because Riverkeeper did not object to the jury instruction to which it now lodges this appeal, the appropriate standard is the plain error standard of review.

### 2. <u>Riverkeeper abandoned its "open dumping" theory of liability with its voluntary dismissal of Count III, rendering any further analysis moot.</u>

In logic that is very difficult to follow, Riverkeeper now alleges in this appeal that the trial court erred in (Appellee surmises) failing to instruct the jury regarding its theory of "open dumping". As pointed out by the trial court in its denial of Riverkeeper's Motion to Alter or Amend, this theory was voluntarily dismissed and abandoned before trial.

In the Pre-Trial Order, Riverkeeper brought two counts under the RCRA: Count Two reasoned that Ray violated the RCRA by operating a Construction and Demolition Landfill "without first obtaining a solid waste disposal permit"; Count Three reasoned Ray violated by operating an "open dump," which the Act prohibits under all circumstances. Pre-Trial Order, R. 92, Page ID # 1324. The trial court pointed out the inconsistency between these two theories in its Order Denying the Motion for Summary Judgment, as an "open dump" cannot be a "sanitary landfill" under the RCRA. Order Denying Summary Judgment, R. 94,

Page ID # 1340 (footnote 2 citing 42 U.S.C. § 6903(14)). The trial court's objection to the inconsistencies in these two theories convinced counsel for Riverkeeper to voluntarily dismiss Count Three: "Count Three in our complaint, your order from Friday, I understand you don't like that count either. And I don't like it either. And I ***would be happy to just dismiss that count***." Pre-Trial Conference Transcript, R. 128, Page ID ## 1641-1642; *see also* Order on Pre-Trial Conference, R. 96, Page ID # 1365. Riverkeeper couldn't have been any clearer; it voluntarily dismissed its theory of "open dumping" and therefore, waived its right to appeal on such grounds. The analysis on this issue can stop here.

### 3. **The Tennessee exemption to the landfill permitting requirement is consistent with the Resource Conservation and Recovery Act and is not preempted by federal law.**

When the RCRA was enacted, the purpose of the act, in part, was to regulate, approve, and establish solid waste management plans to be administered by individual states themselves. *See* 42 U.S.C. §6941-42. Riverkeeper brought its claim against Mr. Ray under the citizens suit provision set forth in the RCRA, which provides that any person may commence a civil action against any other person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement,

prohibition, or order which has become effective pursuant to this chapter." *Id.* at § 6972. Notably, this provision does not include the Act itself or any other federal statute that could be violated, as the intention was for these regulations to be set forth by individual states themselves.

What has been consistently unclear in this matter is which "standard, regulation, condition, requirement, prohibition, or order" Riverkeeper alleges that Mr. Ray violated. Riverkeeper attempts to confuse the issue by citing to various sections of the RCRA governing the approval and minimum criteria of state-run solid waste management programs and presenting these minimum criteria as standards that could be violated by individuals and therefore, used as the basis for citizens suits under Section 6972. Section 6943 of the RCRA provides the Requirements for approval of State plans and Section 6944 provides minimum standards for the eventual regulatory criteria to be set forth by the Administrator of the EPA in determining whether facilities are considered "open dumps" or "sanitary landfills". *Id.* at §§ 6943(a)(1), 6944(a). These Sections are not, as Riverkeeper would suggest, regulations over solid waste facilities themselves.

The actual "regulations" which could be violated and used as a basis for a Section 6972 citizen suit are set forth by each state, and in this case, are found in the Rules of the Tennessee Department of Environment and Conservation, Solid Waste Management Division, Chapter 0400-11-01 – Solid Waste Processing and Disposal (hereinafter, the "Tennessee Landfill Regulations"). Rule 0400-11-01.02(1)(b)(1) of the Tennessee Landfill Regulations, entitled "Permitting of Solid Waste Storage, Processing, and Disposal Facilities", provides, "Except as otherwise provided in this rule, no facility can lawfully store, process, or dispose of solid waste unless the operator has a permit." Further, "The following facilities are *not subject to the requirement to have a permit*: . . . (xiii) The use of solely natural rock, dirt, stumps, pavement, concrete and rebar, and/or brick rubble as fill material." Rule 0400-11-01.02(1)(b)(3).

The trial court found that these Rules were the proper "regulation" which could form the basis of an RCRA citizen suit and therefore, the exception under Rule 0400-11-01.02(1)(b)(3) could provide a defense against Riverkeeper's claim that Mr. Ray was required to obtain a landfill permit for his property, leading to the jury instruction at issue here. *See* Trial Transcript (Day 2), R. 132, Page ID # 1938. Under a plain error

standard, along with any other standard of review, the trial court cannot be found to have erred by applying the appropriate regulatory authority over landfill permitting to a matter including alleged landfill permitting violations.

Even assuming *in arguendo*, should the inapplicable standards set forth in the RCRA for state programs be applied as the proper framework for citizens suits, Riverkeeper's argument fails on the merits. The RCRA defines the relevant terms "open dump" and "sanitary landfill" as follows:

> (14) The term "open dump" means any facility or site where solid waste is disposed of which is not a sanitary landfill which meets the criteria promulgated under section 6944 of this title and which is not a facility for disposal of hazardous waste.
>
> . . . .
>
> (26) The term "sanitary landfill" means a facility for the disposal of solid waste which meets the criteria published under section 6944 of this title.

42 U.S.C. § 6903. The cited Section 6944 of the RCRA provides criteria (to be established by the Administrator of the EPA) for sanitary landfills:

> At a minimum, such criteria shall provide that a facility may be classified as a sanitary landfill and not an open dump only if there is ***no reasonable probability of adverse effects on health or the environment from disposal of solid waste*** at such facility. Such regulations may provide for the classification of the types of sanitary landfills.

42 U.S.C. § 6944(a). (emphasis added).

Even if Riverkeeper's warped argument that Mr. Ray is somehow liable for the alleged deficiencies in Tennessee's solid waste management program is considered on its merits, the program clearly satisfies the requirements set forth under the RCRA. Tennessee Landfill Regulations provide that permits must be obtained for facilities, unless such a facility uses "***solely*** natural rock, dirt, stumps, pavement, concrete and rebar, and/or brick rubble as fill material." Rule 0400-11-01.02(1)(b)(1).

The common thread between these types of fill material is that each is non-toxic and naturally occurring. It can be inferred that this exception for placing rock, dirt, tree stumps, or things made from dirt and/or rock (pavement, concrete, rebar, and brick rubble) was created under the finding that there was no reasonable probability of adverse effects on health or the environment from disposal of these materials underground. Riverkeeper has provided no authority that would suggest that these naturally occurring materials do pose such a thread to public health or the environment. Instead, Appellant alleges that such a threat only exists if these materials were carried away by stormwater runoff into waters of the United States, which is squarely within the jurisdiction

of the CWA, not the RCRA. Because Tennessee Landfill Regulations do not allow facilities that pose threats to public health or the environment, they are properly implemented and not preempted by the RCRA.

## VII. CONCLUSION

For the reasons presented above, the decisions of the trial court at issue were proper and should be affirmed.

Respectfully submitted,

**SMITH CASHION & ORR, PLC**

*/s/ William L. Fitts*

Gregory L. Cashion
William L. Fitts
One American Center
3100 West End Ave., Suite 800
Nashville, Tennessee 37203
(615) 742-8555
gcashion@smithcashion.com
wfitts@smithcashion.com

## VIII. CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 6535 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

## IX. ADDENDUM

### DESIGNATION of RELEVANT DOCUMENTS

| R. | Page ID# | Description |
|---|---|---|
| 48 | 274–301 | Amended Complaint |
| 86 | 1278–1280 | Requested Jury Charges |
| 92 | 1324, 1323 | Pretrial Order |
| 94 | 1340 | Order Denying Motion for Summary Judgment |
| 96 | 1365 | Order on Pre-trial Conference |
| 100 | 1436 | Riverkeeper's Trial Brief |
| 124 | 1573 | Judgment |
| 125 | 1575–1580 | Order on Rule 50 Motion |
| 126 | 1582–1584 | Plaintiff's Rule 59 Motion |
| 131 | 1677, 1776, 1814–1815, 1818 | Trial Transcript (Day One) |
| 132 | 1936, 1938, 1958–1964, 1967 | Trial Transcript (Day Two) |
| 133 | 1989, 1995, 1998, 2092, 2094–2095 | Trial Transcript (Day Three) |
| 137 | 2121–2127 | Memorandum Opinion |
| 138 | 2131 | Order denying Motion to Alter or Amend |
| 139 | 2132–2133 | Notice of Appeal |