No. 26-5178

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TENNESSEE RIVERKEEPER,

Plaintiff - Appellant,

v.

CRYSTAL RAY

Defendant

RICKY RAY, dba RR Farms, aka RR Farms Mass Grading

Defendant - Appellee

----------------------------------
Appeal from the United States District Court for the
Middle District of Tennessee
----------------------------------

------------------------
# REPLY BRIEF OF APPELLANT, TENNESSEE RIVERKEEPER, INC.
------------------------

Mark E. Martin
P.O. Box 1486
Oneonta, Alabama 35121
(205) 516-9350
Counsel for Appellant,
Tennessee Riverkeeper, Inc.

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................ **II**

**TABLE OF AUTHORITIES** ...................................................................**III**

**ARGUMENT** ........................................................................................**2**

**DESIGNATION OF RELEVANT DOCUMEMTS** ...........................................**22**

# TABLE OF AUTHORITIES

## CASES

*Borden Ranch P'ship v. U.S. Army Corps of Eng'rs*, 261 F.3d 810 (9th Cir. 2001)11

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481 (2d Cir. 2001). ....................12

*City of Mountain Park v. Lakeside at Ansley, LLC,* 560 F. Supp. 2d 1288 (N.D. Ga. 2008) ....................13

*Contour Indus. v. U.S. Bank, N.A.*, 437 F. App'x 408 (6th Cir. 2011). ....................17

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167 (2000)....................7

*Gregory v. Shelby Cnty.*, 220 F.3d 433 (6th Cir. 2000)....................4

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49 (1987)..........7

*Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531 (6th Cir. 2008)....................12

*Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825 (9th Cir. 2021).......9

*N.C. Shellfish Growers*, 278 F. Supp. 2d at 676 (E.D.N.C. 2003). ....................13

*Olsen v. Am. Steamship Co.*, 176 F.3d 891 (6th Cir. 1999)) ....................4

*Ordos City Hawtai Autobody Co. v. Dimond Rigging Co.*, 695 F. App'x 864 (6th Cir. 2017)....................4

*Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535 (6th Cir. 1995).....16

*Pymatuning Water Shed Citizens for a Hygienic Environment v. Eaton,506 F.Supp. 902 (W.D.Pa.1980)* ....................................................................................2, 8

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) .........................12

*Rybachek v. U.S. E.P.A.*, 904 F.2d 1276 (9th Cir. 1990)........................................11

*Sierra Club v. Simkins Industries*, 847 F.2d 1109 (4th Cir. 1988). .......................2, 8

*Slinger v. PendaForm Co*., 2022 WL 2133745 (6th Cir. June 14, 2022)..................5

*U.S. v. Cundiff*, 555 F.3d 200 (6th Cir. 2009)................................................. 11, 12

*U.S. v. Hamel*, 551 F.2d 107 (6th Cir. 1977)........................................................11

*United States v. Deaton*, 209 F.3d 331 (4th Cir. 2000) ..........................................11

*Waterkeeper All., Inc. v. U.S. E.P.A.*, 399 F.3d 486 (2d Cir. 2005). .........................9

# ARGUMENT

## I. INTRODUCTION

Appellee's brief rests on a factual claim about the caselaw and a factual claim about the record. Both are wrong.

The claim about the caselaw: Appellee contends that Riverkeeper "has consistently failed to provide any case where a permit violation alone was sufficient" to sustain a Clean Water Act citizen suit, "likely because no such case exists." Appellee's Br. 15. Two such cases are already in this litigation. *Sierra Club v. Simkins Industries* — cited in Riverkeeper's opening brief and nowhere mentioned in Appellee's — affirmed liability for monitoring and reporting violations with no proof of any underlying discharge exceedance. 847 F.2d 1109, 1114-15 (4th Cir. 1988). And *Pymatuning Water Shed Citizens for a Hygienic Environment v. Eaton*—Appellee's own authority—held that an NPDES permittee's violations entitled the plaintiff to relief without having to prove violations of effluent standards or limitations. 506 F. Supp. 902, 908 (W.D. Pa. 1980) ("Inasmuch as we have found violations of the NPDES permit it is unnecessary to determine whether plaintiffs have proved violations of effluent standards or limitations under section 301…or any other section

of the Clean Water Act."). Appellee cited *Pymatuning* for a remedies point but the holding provides the liability rule Appellee says does not exist. *See id*.

The claim about the record: that Riverkeeper conceded away its procedural-permit theory at trial and assented to the jury instruction it now challenges. The transcript shows the opposite. Riverkeeper's counsel expressly corrected the statement that Appellee quotes—"I misspoke, Judge"—and distinguished the water-quality claims from the procedural claims two answers before the line Appellee excerpts. (R. 132, PageID# 1966-67.) And Riverkeeper objected to the exemption instruction at the charge conference — "we object to the use of the exception in the jury charge whatsoever" — an objection the district court overruled. (R. 133, PageID# 2039, 2059.) Appellee's brief quotes the colloquies before and after that objection while omitting the objection itself.

The judgment below rests on a discharge requirement misapplied to non-discharge claims and a state exemption misapplied over Riverkeeper's preserved objection. It should be reversed.[1]

[1] This reply brief is intended solely to respond to the appellee's contentions that require further discussion for proper determination of the issues raised on appeal. This brief does not respond to issues that appellant believes were adequately discussed in the opening brief, and appellant intends no waiver of these issues by not expressly reiterating them herein.

## II. THE PROCEDURAL-PERMIT-VIOLATION THEORY WAS PRESERVED.

### A. The Pretrial Order Advances the Theory Thirteen Times.

Appellee's forfeiture argument quotes the Pretrial Order's ¶ 3, “Plaintiff’s Theory of the Case,” and stops, as though ¶ 5, “Statement of the Issues for the Jury,” did not exist. The Statement of the Issues for the Jury enumerates thirteen separate procedural-permit-violation issues—including site assessments (¶ 5(9)), SWPPP implementation and BMP maintenance (¶ 5(14)), twice-weekly inspections (¶ 5(21)), and ten more — each asking whether Ray "violate[d] the NPDES permit by failure to" perform a discrete operational requirement, none requiring proof of a pollutant discharge, and all appearing separately from the discharge issues enumerated at ¶ 5(5)-(8). (R. 92, PageID# 1326-28.)

The governing rule comes from Appellee's own authorities, and Riverkeeper satisfies it. Forfeiture under Rule 16 follows from a party's failure to advance a theory of recovery in the pretrial order. *Gregory v. Shelby Cnty.*, 220 F.3d 433, 442 (6th Cir. 2000) (citing *Olsen v. Am. Steamship Co.*, 176 F.3d 891 (6th Cir. 1999)). Parties forfeit claims "not raised in the final pretrial order." *Ordos City Hawtai Autobody Co. v. Dimond Rigging Co.*, 695 F. App'x 864, 875 (6th Cir. 2017). These claims were raised in the final pretrial order — thirteen times, in language tracking the very permit

conditions Riverkeeper sought to enforce. *Slinger v. PendaForm Co.* — also Appellee's citation — proves the point twice over. The argument the Sixth Circuit there held forfeited was one the party "didn't raise . . . until after trial." 2022 WL 2133745, at *3 (6th Cir. June 14, 2022). One page later, the court held a different argument preserved because the party "pressed this issue before the district court at each stage of the litigation." *Id.* at *4. Riverkeeper's procedural-permit theory is the second kind: pleaded in the Amended Complaint, enumerated in the Pretrial Order, briefed mid-trial (R. 117, PageID# 1507-16), and argued in opposition to Rule 50. Appellee's response to the thirteen enumerated issues — that they are "purely without merit and . . . without any authoritative support" — is an adjective, not an argument. The authoritative support is Rule 16 itself: the pretrial order "controls the course of the action," Fed. R. Civ. P. 16(d), and this one certified these issues for the jury over the district court's signature two weeks before trial.

**B. The Colloquy Appellee Quotes Says the Opposite of What Appellee Says.**

Appellee lifts one line from the Rule 50 oral argument before the trial court — "Yeah, we have to prove there's a pollutant" — and presents it as a global concession that every Count One claim required pollutant proof. Appellee's Br. 11; R. 132, Page ID #1967. The transcript shows otherwise. When the district court asked whether

pollutant proof applied to all four permit violations under discussion, Riverkeeper's counsel corrected himself expressly: "I misspoke, Judge. The water quality sections of our permit . . . require discharge of a pollutant, because that's what the permit says. . . . And the rest are violations of the permit." (R. 132, PageID# 1966-67.) Counsel thus drew on the record precisely the distinction Riverkeeper's briefs draw: the water-quality claims (GCSP §§ 6.3.1, 6.3.2(c)) involve a pollutant discharge — which the visual evidence and § 1362(6)'s enumeration supply — while the remaining claims are permit violations actionable without one. The sentence Appellee quotes appears within the water-quality discussion, immediately before counsel read § 1362(6)'s enumeration of "rock" and "sand" into the record. (R. 132, PageID# 1967-68.) A statement about the elements of one theory does not abandon a different theory enumerated thirteen times in the operative pretrial document.

Appellee's own trial counsel, moreover, conceded that the procedural-permit theory exists. Arguing the Rule 50 motion, counsel acknowledged that "[a] violation of a permit can be brought underneath the Clean Water Act's citizen suits," and that he had "found other cases . . . in the Sixth Circuit where people have . . . enforced permit conditions under the Clean Water Act citizen suit provision." (R. 132, PageID# 1959-61.) His argument was not that such claims do not exist but that they "would only lead to injunctive relief." (R. 132, PageID# 1964.) Riverkeeper sought injunctive relief. (R.

92 ¶ 6(d)-(i), PageID# 1330.) On Defendant's own trial theory, then, the procedural-permit claims survived Rule 50 at least for injunctive relief — and dismissal of Count One in its entirety was error even on Appellee's terms.

Yet Appellee's terms are still wrong: the Act authorizes civil penalties for violation of "any permit condition or limitation," 33 U.S.C. § 1319(d), and both *Gwaltney* and *Laidlaw* involved penalties for permit violations. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49 (1987), *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167 (2000).

### C. Riverkeeper Tendered Jury Instructions for Every Procedural Violation Before the Pretrial Order.

The forfeiture ruling cannot survive Riverkeeper's own proposed jury charges. On May 12, 2025—nine days before the Pretrial Order—Riverkeeper filed requested instructions containing a separate charge for each of the fourteen Count One sub-violations: site assessment (Requested Charge 5), erosion and sediment control design (6-7), best-practicable technology (8), pollution-prevention measures (9), best management practices (10), the SWPPP description requirements (11-14), discharge quality under § 6.3.2(c) (15), state water-quality standards under § 6.3.1 (16), and twice-weekly inspections (17). (Requested Jury Charges, R. 86, PageID # 1280-88.) Appellee cites this very filing. Appellee's Br. 11.

A theory for which the plaintiff tendered fourteen jury instructions, and for which the district court then prepared its own charge template and directed the parties to build the rest— "I've got to break each one down" for all fourteen (R. 128, PageID# 1655)—was not absent from the case. It was the case. The forfeiture ruling cannot be reconciled with the Pretrial Order the court signed, the thirteen issues it certified, the fourteen charges Riverkeeper tendered, or the template the court itself drafted.

## III. SECTION 1365(f)(7) CLAIMS DO NOT REQUIRE PROOF OF POLLUTANT CONTENT.

The cases Appellee says do not exist, holding that a permit violation without proof of discharge can sustain a CWA claim, are cited in both Appellant and Appellee's own brief. *Simkins* affirmed citizen-suit liability for monitoring and reporting violations without proof of any underlying discharge exceedance, because "the failure to comply with reporting requirements is itself a substantive violation, regardless of whether the underlying conduct . . . constituted a violation." 847 F.2d at 1114. Appellee's brief does not mention *Simkins*—not to distinguish it, not at all.

Moreover, *Pymatuning*, Appellee's citation, granted relief for NPDES permit violations and held it therefore "unnecessary to determine whether plaintiffs have proved violations of effluent standards or limitations under section 301…or any other section of the Clean Water Act." 506 F. Supp. at 908. Appellee also emphasizes

*Corona Clay*'s statement that the CWA "vests district courts with jurisdiction over a citizen suit **only upon proof of discharge into the navigable waters of the United States.**" *See Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 836 (9th Cir. 2021) (Appellee's emphasis). The emphasized words do not contain the word "pollutant." The jurisdictional predicate is that a discharge reached navigable waters. *See id*. ("Gwaltney permits a citizen suit based [on] ongoing or imminent procedural violations."). Here, there are procedural violations, undisputed and enumerated in the Pretrial Order across sixteen specified dates (R. 92 ¶ 5(22), PageID# 1328) and depicted in photographic and video exhibits at trial. *Corona* further holds, but Appellee never quotes: "[I]t is settled that CWA citizen suits may rest on non-discharge violations of a permit." *Id.* at 833.

Finally, the passage Appellee quotes from *Waterkeeper Alliance* holds that a facility that has never discharged has no statutory obligation "to seek or obtain an NPDES permit in the first instance." *Waterkeeper All., Inc. v. U.S. E.P.A.*, 399 F.3d 486, 505-06 (2d Cir. 2005). It addresses when the permit obligation attaches—not whether an existing permittee's conditions are enforceable. Ray has a permit. The passage is inapposite.

## IV. RIVERKEEPER'S EVIDENCE OF A POLLUTANT DISCHARGE WAS SUFFICIENT.

### A. The Statute Enumerates Common Materials, Not Laboratory Analytes.

Section 1362(6) defines "pollutant" to include "rock, sand, [and] cellar dirt," all of which are materials identifiable by ordinary observation. 33 U.S.C. § 1362(6). Nothing in the statute conditions their proof on chemical analysis, and Appellee cites no case imposing one.

The district court's own formulation concedes the crucial premise: the water "obviously must have been muddy with something." (R. 137, PageID # 2127.) Thus, at a site the jury found to be a Class IV construction and demolition landfill that receives "rock, dirt, stumps, pavement, concrete and rebar, and/or brick rubble" in fill quantities (R. 133, PageID # 2095; # 2106), the *something* being discharged into waters of the United States includes at least the solid waste being received at the site; it does not require rank speculation nor mass spectrometry to determine that that discharge contains at least the solid waste imported to Mr. Ray's landfill—much less when that landfill is out of compliance with its own NPDES stormwater prevention requirements.

The district court's own reasoning completes the point. Pressing Riverkeeper's counsel, the court observed: "I can make mud out of sand. I can make mud out of

dirt." (R. 132, PageID# 1969.) Sand appears in § 1362(6) by name. And dirt is a statutory pollutant under this Court's own precedent: the discharge held actionable in *Cundiff* was "sidecasting" — "the addition of dredged or excavated dirt" from ditches to adjacent land. *U.S. v. Cundiff*, 555 F.3d 200, 213 (6th Cir. 2009). The Court relied on the Fourth Circuit's definition, reiterating "once you have dug up ***something***, it becomes 'dredged spoil,' a statutory pollutant…it is of no consequence that what is now dredged spoil was previously present on the same property in [a] less threatening form." *Id.* (emphasis added) (quoting *United States v. Deaton*, 209 F.3d 331, 335 (4th Cir. 2000)); *see also Deaton*, 209 F.3d at 336 ("Congress determined that ***plain dirt***, once excavated from waters of the United States, could not be redeposited into those waters without causing harm to the environment." (emphasis added); *Borden Ranch P'ship v. U.S. Army Corps of Eng'rs*, 261 F.3d 810, 814-15 (9th Cir. 2001) (churned and redeposited soil), *aff'd by an equally divided Court*, 537 U.S. 99 (2002); *Rybachek v. U.S. E.P.A.*, 904 F.2d 1276, 1285 (9th Cir. 1990).

Suspended sediment is in all events "solid waste" within § 1362(6), and turbidity is fine particles of the enumerated rock and sand in suspension. The Act's definitions receive "a generous rather than a niggardly construction," *U.S. v. Hamel*, 551 F.2d 107 at 112-13 (6th Cir. 1977), not a reading under which liability turns on whether the dirt came from a basement. On the district court's own account of mud's

possible composition, every candidate is a statutory pollutant. The jury did not need to determine *which* one made the water muddy; each reasonable candidate qualifies, and Rule 50 asks only whether a reasonable inference of at least one was available. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000); *Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531, 543 (6th Cir. 2008).

Appellee's contrary reading—that Riverkeeper had to identify "the material causing the water to appear muddy" by testing—would mean Congress enumerated “sand,” “rock,” and “cellar dirt” unprovable as pollutants except by laboratory analysis no statute requires. *Cundiff*'s observation that material "can be benign in one spot and seriously disruptive . . . in another," 555 F.3d at 213, explains why dirt added to water is a pollutant; it does not impose a chain-of-custody requirement on proving the dirt.

### B. The Inference Chain Is Short and Anchored in the Jury's Own Finding.

The jury found Ray places rock, dirt, and rubble at the Site as fill. (R.123 PageID#:1572). Witnesses photographed and described excessive amounts of muddy water flowing from the base of that fill into Sulphur Creek on more than a dozen dates. "[W]ater cannot be turbid without suspended solids." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 489 (2nd

Cir.2001). A reasonable jury could conclude that the suspended solids are the fill materials — the enumerated pollutants — being carried off the Site. Ray offered no competing explanation for the jury to weigh. Calling that two-step inference "rank speculation" while conceding the water was "muddy with something" is not an application of Rule 50; it is a credibility determination Rule 50 forbids. This is the consensus rule in development-site runoff cases: visible turbidity from sediment-laden water suffices without chemical analysis. *City of Mountain Park v. Lakeside at Ansley, LLC*, 560 F. Supp. 2d 1288, 1296 (N.D. Ga.2008); *N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., LLCs*, 278 F. Supp. 2d 654, 676 (E.D.N.C. 2003).

**C. Tweden Involved Invisible Chemicals; This Case Involves Dirt.**

Appellee's own trial counsel supplied the distinction. Arguing Rule 50, counsel described *Tweden* as a case about PFOAs—"which is different than just, you know, dirty water"—in which a scientist inferred the *ongoing* presence of an invisible chemical from the color of water observed after suit. (R. 132, PageID# 1962-63.) The *Tweden* court declined to credit a claim that a scientist could "perceive, with the naked eye, the presence of the pollutants at issue"—a sensible rule for imperceptible analytes. It says nothing about sediment, whose visibility is its evidentiary signature: turbidity *is* suspended solids made visible. *See Catskill Mountains,* at 489.

As counsel put it at trial, "we're dealing with dirt here." (R. 132, PageID# 1963.) Dirt is a statutory pollutant. *Cundiff*, 555 F.3d at 213; *Deaton*, 209 F.3d at 335. Riverkeeper drew this same distinction below, at summary judgment: *Tweden* concerned PFAS, "invisible to the human eye" and undetectable without laboratory testing, whereas "the pollutant is muddy water and sediment which is very evident to the human eye." (R. 78, PageID# 1223.) Appellee repeats the mischaracterization on appeal notwithstanding.

### D. The Permit's Visual Standard Is Comparative and Requires No Expert.

Appellee argues "objectionable" is a technical term requiring expert testimony, offering the hypothetical that a lay witness could find water "too clear" or "too blue." The hypothetical ignores the text. Section 6.3.2(c) prohibits discharges causing objectionable appearance "*compared to the turbidity or color of the receiving water*, considering the nature and location of the water." The baseline is built into the standard: the receiving stream itself. A muddy discharge into an equally muddy stream produces no contrast and no violation; a muddy discharge visibly discoloring a clearer stream does. The photographs show that contrast directly, at the confluence, on multiple dates. (Exs. 16, 17, 20, 26, 47; R. 132, PageID# 1897.)

Appellee's hypothetical also mistakes who decides. A witness's testimony that an appearance is objectionable does not adjudicate a violation; it is evidence. The jury applies the comparative standard to the photographs and testimony — the same way juries apply "reasonable," "offensive," and "unreasonably dangerous" every day without expert translation. A standard written in the vocabulary of ordinary visual perception, with its comparator specified in the text, requires no expert — and Appellee cites no authority that it does. Nor is any tension supplied by the district court's Rule 702 ruling, which excluded Mr. Sulkin's opinions while expressly permitting him to "testify . . . based solely on his personal knowledge." (R. 128, PageID# 1651.)

## V. THE COUNT TWO CHALLENGE WAS PRESERVED AND IS MERITORIOUS.

### A. Riverkeeper Objected to the Exemption Instruction, and the Court Overruled the Objection.

Appellee's waiver argument quotes the colloquies before and after the charge conference while omitting what happened at them. At the charge conference, Riverkeeper objected to the exemption instruction in terms: "we object to the use of the exception in the jury charge whatsoever because that's state law." (R. 133, PageID# 2039.) Riverkeeper explained the basis—the Tennessee exception "provides

a standard that is below what RCRA provides," and "RCRA provides the federal floor." (R. 133, PageID# 2036-37.) The district court overruled the objection. (R. 133, PageID# 2059.)

That is preservation under the rule's own text. A party preserves a challenge to an instruction by objecting "on the record, stating distinctly the matter objected to and the grounds," Fed. R. Civ. P. 51(c)(1), before the instructions are delivered, Fed. R. Civ. P. 51(c)(2)(A), and "may assign as error . . . an error in an instruction actually given, if that party properly objected," Fed. R. Civ. P. 51(d)(1)(A). Riverkeeper did each of these things. Once the court definitively overruled the objection, no renewal was required. *See Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 547 (6th Cir. 1995). (post-charge renewal excused where "plainly apparent from the discussion... that the judge was aware of a party's dissatisfaction with the instruction... and the specific basis") (quoting Woodbridge v. Dahlberg, 954 F.2d 1231, 1237 (6th Cir. 1992)).

The exchanges Appellee quotes do not unwind the ruled-upon objection. The pre-charge "we agree" colloquy concerned the *sequence* of jury questions — landfill first, then exemption — and in the same exchange Riverkeeper reserved the merits: "we think the exception didn't apply." (R. 132, PageID# 1936-37.) Assent to the order in which questions would be put is not assent to the legal availability of the

exemption, which the district court decided itself as a matter of law. (R. 137, PageID# 2130.) The post-charge exchange came after the court had already ruled; Riverkeeper nonetheless restated its objection "for the reasons stated earlier," and the court noted it. (R. 133, PageID# 2102-05.) The trial judge knew Riverkeeper objected and knew the grounds—from summary-judgment briefing (R. 78, PageID# 1221, 1224), the proposed instructions (R. 86, PageID# 1289), the trial brief (R. 100, PageID# 1436, 1438), the Count Two brief (R. 113, PageID# 1491, 1495), and the overruled charge-conference objection. Under Appellee's own authority, review of a preserved instructional challenge is de novo. *Contour Indus. v. U.S. Bank, N.A.*, 437 F. App'x 408, 419 (6th Cir. 2011).

### B. Appellee's Waiver Accusation Comes from the Party That Never Pleaded the Defense.

Appellee's waiver argument warrants one further observation. The exemption operated at trial as an affirmative defense: the verdict form asked whether "Ricky Ray prove[d], by a preponderance of the evidence," that the exemption applied. (R. 123, PageID# 1572.) Ray never pleaded it. His Answer to the Amended Complaint contains no such defense (R. 76, PageID# 1189); the exemption first surfaced in his summary-judgment response, filed five days after the Answer. A party that never pleaded the defense it prevailed on, Fed. R. Civ. P. 8(c), is poorly positioned to accuse

its opponent—who briefed opposition to the exemption at summary judgment, in its proposed instructions, in two trial briefs, and in an overruled charge-conference objection—of failing to preserve the issue.

### C. Count Three's Dismissal Did Not Remove Open Dumping from Count Two.

The counts' own captions refute Appellee's abandonment argument. Count Three was titled "Operating an Open Dump Due to Violations of the Clean Water Act" — the theory parasitic on Count One — and was dismissed by agreement. (R. 96, PageID# 1363, 1365.) Count Two was and is titled "Operating an Open Dump due to Failure to Obtain a Landfill Permit." (R. 48, PageID# 296.) The open-dumping framework Riverkeeper invokes is Count Two's own caption. And at trial, Riverkeeper's counsel articulated the theory on the record without objection: failing to obtain a permit while disposing of solid waste "amounts to open dumping, which is the heart of Count Two." (R. 132, PageID# 1935.) Riverkeeper does not relitigate Count Three; it invokes the open-dumping prohibition as the federal floor against which the exemption instruction must be measured.

### D. Appellee's Reading of § 6972 Is Refuted by the Statute's Text.

Appellee argues that § 6972(a)(1)(A) reaches only state-promulgated regulations, so RCRA's own provisions cannot be violated by an individual. Section

6945(a) answers this expressly: its open-dumping prohibition "shall be enforceable under section 6972 of this title against persons engaged in the act of open dumping." 42 U.S.C. § 6945(a). Congress made the federal prohibition itself citizen-enforceable in the provision that creates it.

### E. The Merits Stand Effectively Unrebutted.

Appellee's brief does not respond to the *Russello* disparate-usage canon or the "use"/"disposal" architecture of the exemption; to EPA's four beneficial-use criteria, 80 Fed. Reg. 21302, 21348 (Apr. 17, 2015); to EPA's identification of fill-quantity placement as "prima facie discard," *id.*; or to the as-applied preemption framework under *Hines* and *Gade*. These arguments are not new. Riverkeeper briefed the ambiguity of the exemption, the "disposal"-versus-"use" contrast across subsections (iv)-(vi) and (xiii), the narrow-construction canon, and the beneficial-use limits recognized by other states at summary judgment. (R. 78, PageID# 1224-29.) They were preserved below and stand unrebutted here. Its sole affirmative argument is that the enumerated materials are "non-toxic and naturally occurring," so an absence of environmental risk "can be inferred." No text supports the inference, and the list itself contradicts it: rebar is steel. The argument also proves too much — on Appellee's reading, unlimited quantities of concrete and rebar may be permanently disposed of

anywhere in Tennessee, without permit, application, or evaluation, so long as the disposer calls it fill. That is the regulatory gap RCRA's federal floor exists to close.

## VI. CONCLUSION

The Court should reverse the Rule 50 judgment on Count One and remand for trial. The Court should reverse the judgment on Count Two and remand for entry of judgment for Riverkeeper on liability or, in the alternative, for a new trial with the jury properly instructed that the fill-material exemption does not authorize fill-quantity disposal at an unpermitted Class IV landfill.

/s Mark E. Martin
Mark E. Martin
PO Box 1486
Oneonta, AL 35121
(205) 516-9350
Counsel for Appellant
Tennessee Riverkeeper, Inc.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 3,931 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

# DESIGNATION of RELEVANT DOCUMENTS

| R. | Page ID# Range | Description |
|---|---|---|
| 48 | 274 – 301 | Amended Complaint |
| 76 | 1189 - 1213 | Answer Amended Comp. |
| 78 | 1221 - 1230 | Plaintiff's Reply to MSJ |
| 86 | 1274 - 1290 | Plaintiff's Proposed Jury Instructions |
| 92 | 1323 - 1331 | Pretrial Order |
| 100 | 1436 - 1446 | Plaintiff's Trial Brief |
| 113 | 1491 - 1498 | Plaintiff's Brief on Count 2 |
| 117 | 1507 - 1516 | Plaintiff's Briefing on Proof of Pollutants |
| 123 | 1572 | Jury Verdict Form |
| 128 | 1619 - 1665 | Transcript of Proceedings |
| 132 | 1825 - 1974 | Transcript Trial Day 2 |
| 133 | 1975 - 2108 | Transcript Trial Day 3 |
| 137 | 2117 - 2130 | The District Court's Memorandum Opinion |